IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**VANESSA J. JONES, Esq. and**
**JONES LAW FIRM, P.A.**                                                                                   **PLAINTIFFS**

v.                                                                   CIVIL ACTION NO. 2:25-cv-31-LG-BWR

**HIGH RISE FINANICAL, (HRF)**
**ANY OTHER NAME FOR HIGH RISE FINANCIAL,**
**including associated companies of HIGH RISE**
**FINANCIAL, MIKE MACKIE individually and**
**in his capacity of HRF JOHN DOE COMPANY,**
**JOHN DOE, individually**                                                                   **DEFENDANTS**

## ORDER GRANTING DEFENDANT HIGH RISE FINANCIAL, LLC'S MOTION TO COMPEL ARBITRATION

Plaintiffs, Vanessa J. Jones Esq. ("Plaintiff Jones") and her law firm, Jones Law Firm PA (collectively, "Plaintiffs"), have instituted this action against High Rise Financial, LLC ("HRF") and its affiliated companies, along with its employee, Mike Mackie. The claims involve disputes relating to Plaintiff Jones's representation of a client who entered into a litigation funding agreement with HRF and a subsequent Mississippi Bar complaint filed by Mackie against Plaintiff Jones. *See* [19] at 5–7; [1-3][1]. This is the third lawsuit related to the claims asserted here.[2]

---

[1] Plaintiffs filed their Court ordered Amended Complaint [19] on August 11, 2025, in which Plaintiffs adopted the exhibits filed with the original Complaint. *See* [19] at 5. The complaint filed with the Mississippi Bar was one such exhibit.

[2] Plaintiff has filed two prior lawsuits relating to the same underlying disputes. *See Jones v. High Rise Fin. LLC*, 2:22-cv-169-HSO-BWR (S.D. Miss. 2022)(dismissed on January 3, 2023 for lack of subject matter jurisdiction) and *Jones v. High Rise Fin. LLC*, 2:23-cv-3-HSO-BWR (S.D. Miss. 2023)(dismissed without prejudice on June 14, 2023 pursuant to Fed. R. Civ. P. 4(m) for failure to effect service of process).

HRF has filed a Motion to Compel Arbitration [8]. Upon consideration of the Motion, briefs, arguments of counsel and the relevant legal authority, it is the opinion of the Court that the Motion is well taken and should be granted.

## BACKGROUND

On June 14, 2018, Candise Hill, who was a plaintiff in a civil tort case and represented by Plaintiff Jones, entered into a Nonrecourse Purchase Agreement (the "Agreement") with HRF, under which HRF transmitted $2,000.00 to Ms. Hill in exchange for a portion of any recovery if that lawsuit was successful. *See* [8-2] at 2. The Agreement's cover page reflects that it was sent to both Ms. Hill and Plaintiff Jones/Jones Law Firm, PA. [8-2] at 1. As part of the Agreement, Ms. Hill issued an Irrevocable Letter of Direction (the "Letter") to Plaintiff Jones. *See* [8-2] at 11. At the bottom of the Letter is an Attorney's Acknowledgment (the "Acknowledgment"). *See id.*

Within the Acknowledgment, Plaintiff Jones agreed with, certified, and acknowledged that any proceeds from Ms. Hill's claim would be sent to Plaintiff Jones, that all disbursements of proceeds would be made from her attorney trust account, and that she would deliver the amount owed to HRF subordinate to attorney fees, costs and related medical liens. *See id.* The Acknowledgment included an arbitration clause. [8-2] at 11. An HRF representative signed the Acknowledgment on June 14, 2018. Plaintiff Jones signed on June 18, 2018. *Id.*

HRF contends that when Ms. Hill settled her lawsuit, Plaintiff Jones failed to notify HRF or remit to HRF its portion of the settlement proceeds. Believing this to be a violation of the Mississippi Rules of Professional Conduct, HRF employee Mike

2

Mackie, on behalf of HRF, filed a complaint with the Mississippi Bar against Plaintiff Jones for her alleged failure to honor HRF's lien on the settlement funds. *See* [1-3].

## DISCUSSION

### I. APPLICABLE LAW

"In adjudicating a motion to compel arbitration under the [FAA], courts generally conduct a two-step inquiry." *Brown v. Pac. Life Ins. Co.*, 462 F.3d 354, 396 (5th Cir. 2006) (quoting *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996)). First, the Court must determine whether the parties agreed to arbitrate the dispute. *Id*. (citation omitted). This requires two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id*. (quoting *Webb*, 89 F.3d at 258). These determinations are made according to state contract law. *See Edwards v. Doordash, Inc.,* 888 F.3d 738, 745 (5th Cir. 2018); *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Webb*, 89 F.3d at 258).

Second, if the Court determines that the parties have agreed to arbitrate the dispute, it must ask if "any federal statute or policy renders the claims nonarbitrable." *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). If there is a valid agreement to arbitrate and that there are no legal impediments to doing so, then the court must grant the motion." *Esch v. CMH Homes, Inc.*, 2024 WL 716054, at *1 (N.D. Miss. 2024) (emphasis added) (citation omitted).

"The Supreme Court has made it clear that the Federal Arbitration Act, 9

3

U.S.C. § 3, establishes a 'liberal policy favoring arbitration' and a 'strong federal policy in favor of enforcing arbitration agreements.'" *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (citation omitted). Thus, all doubts as to whether a given dispute may be arbitrated should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000). Because there is a strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004).

## II. ANALYSIS

As to the first step in the Court's analysis, HRF argues that the undisputed evidence here confirms the parties entered into a valid arbitration agreement with the focus being on the Acknowledgment located on Page 11 of the Agreement at the bottom of the "Irrevocable Letter of Direction." [8-2] at 11. The paragraph just above the Acknowledgment, a statement is signed by Ms. Hill and directed to Plaintiff Jones, states: "By signing the acknowledgement below, you agree that this letter is from me and that you will comply with the terms of this Irrevocable Letter of Direction." *See id.* The Acknowledgment is indeed signed by Plaintiff Jones, as well as a representative of HRF. *See id.* One term that Plaintiff Jones explicitly agreed to comply with states:

> I acknowledge that all disputes arising out of this transaction involving me and my law firm will be resolved via arbitration with Arbitration Resolution Services based on their rules at

> www.arbresolutions.com per the Non-Recourse Purchase Agreement and the Irrevocable Letter of Direction. The prevailing party will be entitled to all legal fees and costs.

[8-2] at 11. The full arbitration provision from the Non-Recourse Purchase Agreement, referenced in the above paragraph, is found in Section 6.5. *See* [8-2] at 7–8.

In their Response, Plaintiffs stress that they were neither parties nor signatories to the Agreement. [12] at 1-6. Regardless, "federal courts have held that so long as there is some written agreement to arbitrate, a third party may be bound to submit to arbitration." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355 (5th Cir. 2003). Moreover, "a non-signatory party may be bound to an arbitration agreement if so dictated by the ordinary principles of contract and agency." *Miss. Care Ctr. of Greenville, LLC v. Hinyub*, 975 So. 2d 211, 216 (Miss. 2008) (quoting *Washington Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 266 (5th Cir. 2004)). It is axiomatic that an attorney acts as the agent of the client, such that the client is bound by the acts of its agent. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–634 (1962).

Here, the Agreement contemplates that the "Seller," i.e., Candise Hill, will have an attorney who will act on her behalf in the litigation that is being funded by the Agreement. *See* [8-2] at 5 (defining "Seller's Attorney" as "Vanessa Jones, Jones Law Firm PA"). Because any settlement monies will be collected and disbursed through the "Seller's Attorney," the Acknowledgment serves to bind Plaintiffs to carry out certain obligations as an agent for the Seller. *Cf. Binh v. King & Spalding LLP*, No. 4:21-cv-2234, 2022 WL 130879, at *3 (Jan. 10, 2022) (noting in litigation

between a client and his attorneys relating to a litigation funding agreement that attorneys executed a Counsel Letter "to fulfill one of the [client's] contractual obligations" to the litigation lender). By signing the Acknowledgment, Plaintiffs specifically agreed, as the client's agent, that disputes would be resolved by arbitration as set forth in the main Agreement. Consequently, the Court finds there is a valid arbitration agreement.

Next, the Court must determine whether the dispute in question falls within the scope of the arbitration agreement. *See Webb*, 89 F.3d at 258. In so doing, the Court "answers a question of substantive arbitrability, which concern[s] the existence, enforceability and scope of an agreement to arbitrate." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) (internal quotations omitted).

HRF argues that, because this lawsuit arises from a dispute caused by Plaintiff Jones's noncompliance with the Agreement, the claims herein fall within the broad scope of the parties' arbitration provision. Indeed, the provision clearly states that arbitration is to cover "all disputes arising out of this transaction involving [Plaintiff Jones] and [her] law firm." [8-2] at 11. Plaintiffs did not address whether their claims fall within the scope of the arbitration provision. And because of this, Defendant urges in its Reply that Plaintiffs have waived the issue. [21] at 2 (citing *United States v. Reagan*, 596 F.3d 251, 254-55 (5th Cir. 2010) (a failure to offer any "arguments or explanation…is a failure to brief and constitutes waiver.")).

Notwithstanding these arguments, parties sometimes delegate the arbitrability issue by "expressly incorporat[ing] rules empowering *the arbitrator* to

6

decide substantive arbitrability." *Halliburton,* 921 F.3d at 537. Here, neither party addresses the complete arbitration provision in the Agreement, as referenced in the Acknowledgment, which states:

> THE PARTIES AGREE THAT THE ISSUE OF ARBITRABILITY SHALL BE DECIDED BY THE ARBITRATOR AND NOT BY ANY OTHER PERSON. THAT IS, THE QUESTION OF WHETHER A DISPUTE ITSELF IS SUBJECT TO ARBITRATION SHALL BE DECIDED SOLELY BY THE ARBITRATOR AND NOT, FOR EXAMPLE, BY ANY COURT. IN SO DOING, THE INTENT OF THE PARTIES IS TO DIVEST ANY AND ALL COURTS OF JURISDICTION IN DISPUTES INVOLVING THE PARTIES, EXCEPT FOR THE CONFIRMATION OF THE AWARD AND ENFORCEMENT.

[8-2] at 8. Based on this language, the Court finds that the issue of arbitrability must also be resolved by an arbitrator.

With a valid agreement to arbitrate, the final step is to determine whether legal impediments preclude arbitration. In other words, the only way Plaintiffs can avoid arbitration is to carry their burden to demonstrate that there are legal constraints that would foreclose arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *see also Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (explaining that "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity"). Plaintiffs made only one argument on this issue: waiver, which has been found to be an external legal constraint. *See S. Cent. Heating Inc. v. Clark Constr. Inc. of Mississippi*, 342 So. 3d 160, 166 (Miss. Ct. App. 2022). Plaintiffs seem to argue that because HRF filed a legal proceeding, presumably the Bar complaint, it waived its right to seek arbitration. [12] at 7.

7

Waiver can only occur when a party "actively participates in litigation or takes other actions inconsistent with the right to compel arbitration which substantially invoke the judicial process to the detriment or prejudice of the other party." *Harrison Cnty. Com. Lot, LLC v. H. Gordon Myrick, Inc.*, 107 So. 3d 943, 953 (Miss. 2013). Plaintiffs' argument presupposes that a Bar complaint is amenable to adversarial arbitration. It is not. It is not a judicial process by which HRF itself asserted claims for relief against Plaintiffs. Once an individual reports an attorney to the Mississippi Bar, that reporting individual plays no role in prosecuting the Bar complaint, unlike a plaintiff in a civil suit. As such, the Court finds that HRF did not waive its right to arbitration.

The Court finds that a valid and enforceable arbitration agreement exists and that an arbitrator must determine whether the claims in this case are covered under the arbitration agreement.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion [8] of the Defendant, High Rise Financial, LLC to Compel Arbitration is **GRANTED.**

**SO ORDERED AND ADJUDGED** this the 4th day of December, 2025.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE